# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL ARELLANO, JR.,<br><br>Plaintiff,<br><br>v.<br><br>E. OJEDA, et al.,<br><br>Defendants. | Case No.: 14cv2401-MMA (JLB)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 67] |

Plaintiff Raul Arellano, Jr. is a state prisoner proceeding *pro se* in this action filed pursuant to the Civil Rights Act, 42 U.S.C. § 1983. Defendants E. Ojeda, O. Mack, and L. Helmick move for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* Doc. No. 67. Plaintiff filed a response in opposition to the motion. *See* Doc. No. 79. In addition, the Court permitted Plaintiff to file a supplemental response. *See* Doc. No. 84. The Court took the motion under submission on the briefs and without oral argument pursuant to Civil Local Rule 7.1.d.1. For the reasons set forth below, the Court **GRANTS** Defendants' motion.

## **BACKGROUND**[1]

This action arises out of events occurring on or about April 17, 2014 through April 22, 2014, at R. J. Donovan Correctional Facility in San Diego, California. During that period, Plaintiff was housed in Administrative Segregation Building 6, cell 110. Plaintiff alleges that on Thursday, April 17, 2014 at approximately 10:00 p.m., the toilet in his cell "began to flow out sewer water." Doc. No. 13 at 3.[2] Plaintiff advised an unknown correctional officer of the issue. The unknown correctional officer told Plaintiff that a plumber would be called the next day. Plaintiff claims that his cell had up to three millimeters of sewer water on the floor as a result of the clogged toilet overflowing, such that his "socks and shoes were soaked," his cell smelled "to points where I want to throw up," and he was unable to sleep. *Id.*

On Friday, April 18, 2014, Defendant Correctional Officer Mack worked the second watch from 6:00 a.m. to 2:00 p.m. As part of his duties, he would have been responsible for escorting Plaintiff to the showers. Plaintiff alleges that while walking to the showers, he complained to Defendant Mack about the clogged toilet, and asked for a plunger, or to be switched to another cell. Plaintiff claims that he told Defendant Mack that the night watch officer had put Plaintiff on the list for a plumber, and asked Mack to check and see if a plumber had been called. According to Plaintiff, Defendant Mack told him that "he would see what he could do," but then did nothing. *Id.* at 4. According to

---

[1] These facts are taken from Defendants' Separate Statement of Undisputed Material Facts in Support of the Motion for Summary Judgment; Defendants' declarations submitted in support of the motion for summary judgment; Plaintiff's sworn Supplemental Response in Opposition to Defendant's motion for summary judgment; and Plaintiff's verified Second Amended Complaint. Plaintiff's verified Second Amended Complaint may be used as an opposing affidavit under Rule 56, to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence. *See SAC* at 86; *Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated, under penalty of perjury, contents were true and correct, and allegations were not based purely on information and belief but rather on personal knowledge).

[2] Citations to documents filed on the public docket of this action refer to the pagination assigned by the CM/ECF system.

Defendant Mack, however, "[a]t no point while working in that building on April 18, 2014, did I notice that inmate Arellano's toilet was clogged up and overflowing, or that there was sewage on his floor. I also did not notice any fluid coming out from under any cell door that day. I would have noticed any such condition during my rounds and reported it immediately." Doc. No. 67-6 at 3 ¶ 5. Defendant Mack did not work any other shift during the events in question.

Plaintiff claims that on Saturday, April 19, 2014, an unknown correctional officer told him that a plumber would not come to fix his toilet over the weekend. The officer advised Plaintiff to fill out a Form 22 "Inmate/Parolee Request for Interview, Item or Service." Plaintiff completed the form the next day, and gave it to Defendant Correctional Officer Helmick for delivery to Defendant Correctional Sergeant Ojeda. Plaintiff claims that he complained to Defendant Helmick regarding the conditions in his cell, and Defendant Helmick responded by telling Plaintiff to use his hands to unclog the toilet. According to Defendant Helmick, however, "[a]t no time was there any evidence that there was one inch of sewage in inmate Arellano's cell from April 17 to 22, 2014. There was no sewage smell in the building during the days I worked during that time period. Inmate Arellano never told me there was a sewage problem in his cell. He never asked for a cell change or for cleaning materials." Doc. No. 67-5 at 5 ¶ 11.

Correctional Officer E. Fontan worked the second watch shift on Monday, April 21, 2014 from 6:00 a.m. to 2:00 p.m. During his shift, Officer Fontan provided Plaintiff with breakfast and lunch, and removed his trash from the cell. According to Officer Fontan, "[a]t no time was there any evidence that there was one inch of sewage on in inmate Arellano's cell on Monday April 21, 2014, there was no sewage smell in the building that day, and inmate Arellano never told me there was a sewage problem in his cell." Doc. No. 67-4 at 4 ¶ 9.

Plaintiff alleges that on Tuesday, April 22, 2014, he unclogged the toilet using his hands and cleaned his cell using a twin-sized bed sheet and soap. The next day, Wednesday, April 23, 2014, Defendant Ojeda investigated and responded to Plaintiff's

Form 22 request. Defendant Ojeda inspected Plaintiff's cell, found that the toilet flushed properly, and the cell looked clean. Defendant Ojeda advised Plaintiff to request cleaning supplies from the floor officers. Defendant Ojeda also noted that the "second watch ASU staff say that you did not report to them about the toilet on Thursday or Friday." Doc. No. 13 at 7. According to Defendant Ojeda, upon inspection of Plaintiff's cell "[t]here was no evidence that there had been one inch of sewage covering the entire cell floor for five days. There were no water marks or evidence of water damage anywhere." Doc. No. 67-7 at 5 ¶ 11.

Based on these events, Plaintiff brings an Eighth Amendment conditions of confinement claim against Defendants Helmick, Mack, and Ojeda. Plaintiff asserts that by leaving him in an unsanitary cell, Defendants meted out an unconstitutional punishment. Defendants move for summary judgment, arguing that there is no genuine issue of material fact for trial. Defendants provide declaration testimony disavowing Plaintiff's claim that the conditions in his cell were unsanitary, and argue that Plaintiff did not suffer an unconstitutional condition of confinement. Plaintiff opposes the motion on grounds that he has raised triable issues of fact which must be resolved by a jury.[3]

## **LEGAL STANDARD**

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing

---

[3] Plaintiff also contends that the motion is procedurally improper because Defendants previously moved for summary judgment in this action on the grounds that Plaintiff had not exhausted his administrative remedies. Pursuant to Federal Rule of Civil Procedure 56, "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment *at any time* until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b) (emphasis added). The rule does not limit a party to filing only one motion. Moreover, Defendants' current motion is brought on different substantive grounds. As such, Defendants' motion is properly before the Court.

4

14cv2401-MMA (JLB)

the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

The party opposing summary judgment cannot "rest upon the mere allegations or denials of [its] pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.), cert. denied, 555 U.S. 827 (2008) (internal quotation marks omitted). In applying the standard set forth under Rule 56, district courts must "construe liberally motion papers and pleadings filed by *pro se* inmates and . . . avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

## DISCUSSION

### *1. Relevant Law*

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must prove that the defendant, while acting under color of state law, deprived the plaintiff of a right or privilege conferred by the Constitution of the United States. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004) (citing 42 U.S.C. § 1983).

"The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991) (internal citations omitted) (quoting U.S. Const. amend. VIII). The Cruel and Unusual Punishments Clause may "be applied to some deprivations that were not specifically part of the sentence but were suffered during imprisonment." *Id.* at 297. This application rests on the premise that "deprivations suffered by a prisoner constitute

'punishment' for Eighth Amendment purposes." *Helling v. McKinney*, 509 U.S. 25, 37 (1993) (Thomas, J., dissenting).

It is therefore understood that certain "[c]onditions . . . alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), and in so doing, offend "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958). When this happens, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement," but "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). This involves a two-step inquiry into the objective and subjective components of an Eighth Amendment claim: "Was the deprivation sufficiently serious?" and "Did the officials act with a sufficiently culpable state of mind?" *Wilson*, 501 U.S. at 298; *see also Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009).

### *2. Analysis*

The question in this case is whether a reasonable jury could find, based on the facts stated above and taken in the light most favorable to Plaintiff, cruelty rising to the level of a constitutional violation based on the conditions of Plaintiff's cell and the actions of Defendants. The Court considers each component of Plaintiff's Eighth Amendment claim in turn.

#### a) Sufficiently Serious Deprivation

First, the Court must consider whether a reasonable jury could find that Defendants' conduct resulted in a condition of confinement "harmful enough to satisfy the objective component of an Eighth Amendment claim." *Wilson*, 501 U.S. at 303. In doing so, the Court keeps in mind that "extreme deprivations are required to make out" such a claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty

that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. To this end, courts should not act as guarantors of "an ideal environment for long-term confinement," as "the Constitution does not mandate comfortable prisons." *Id.* at 349.

Despite this admonition, courts have seized upon the fact that "the words of the [Eighth] Amendment are not precise, and that their scope is not static," in order to find potential constitutional violations in a wide-ranging array of circumstances. *Trop*, 356 U.S. at 100-01. For example, "[t]he sustained deprivation of food can be cruel and unusual punishment when it results in pain without any penological purpose." *Foster v. Runnels*, 554 F.3d 807, 814 (9th Cir. 2009). "'[T]he lack of outside exercise for extended periods is a sufficiently serious deprivation' for Eighth Amendment purposes." *Thomas v. Ponder*, 611 F.3d 1144, 1151 (9th Cir. 2010) (quoting *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir.1993). "The Eighth Amendment guarantees adequate heating." *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996). "Adequate lighting is one of the fundamental attributes of 'adequate shelter' required by the Eighth Amendment." *Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985). "The denial of adequate clothing can inflict pain under the Eight Amendment." *Walker v. Sumner*, 14 F.3d 1415, 1421 (9th Cir. 1994). "Indigent inmates have the right to personal hygiene supplies such as toothbrushes and soap." *Keenan*, 83 F.3d at 1091. "Plumbing [that] is in such disrepair as to deprive inmates of basic elements of hygiene and seriously threaten their physical and mental well-being . . . amount[s] to cruel and unusual punishment under the Eighth Amendment." *Hoptowit*, 753 F.2d at 783. Nevertheless, the Ninth Circuit has conceded that "toilets can be unavailable for some period of time without violating the Eighth Amendment." *Johnson*, 217 F.3d 726, 733 (9th Cir. 2000).

Thus, substantial deprivations of water, shelter, food, and sanitation for a significant period of time are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *See, e.g., Johnson*, 217 F.3d at 732-33 (finding that prisoners asserted a sufficiently serious deprivation by alleging that prison officials held them outside without access to adequate shelter, water, food, or sanitation for four days when

7

the temperatures ranged from 70 to 94 degrees and for 17 hours in sub-freezing temperatures).

Of particular relevance here, a lack of sanitation must be "severe or prolonged" to constitute an Eighth Amendment violation. *Anderson v. County of Kern*, 45 F.3d 1310, 1315 (9th Cir. 1995). In *Anderson*, the Ninth Circuit considered the conditions of inmates temporarily confined in a safety cell with a grated pit toilet encrusted with excrement and urine. *Id.* at 1313. The circuit court concluded that the cell's sanitation problems did not run afoul of the Eighth Amendment based on the plaintiffs' "failure to establish that temporary imposition of the conditions of the cell constituted an 'infliction of pain.'" *Id.* at 1315. In so doing, the court cited to cases in which the conditions were found sufficiently severe, such as a prisoner's placement "naked in a lice-infested cell with no blankets in below forty-degree temperatures, denied food or served dirty food, and left with his head in excrement while having a seizure," *Gee v. Estes*, 829 F.2d 1005, 1006 (10th Cir. 1987); a prisoner's placement in a "bare, concrete, 'mental observation' cell with [an] excrement-encrusted pit toilet for 48 hours" while completely deprived of "bedding, sink, washing facilities, or personal hygiene items," *McCray v. Burrell*, 516 F.2d 357, 366-69 (4th Cir. 1974); and a prisoner's confinement "for five days in [a] strip cell with only a pit toilet and without light, a sink, or other washing facilities," *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972). *Id*. at 1314-15.

As noted above, "extreme deprivations are required to make out" a claim of cruel and unusual punishment. *Hudson*, 503 U.S. at 9. Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that no reasonable jury would find the conditions of Plaintiff's cell constitutionally deficient. According to Plaintiff, the toilet overflowed intermittently for several days, never leaving more than three millimeters of water on the floor. His cell smelled at times of sewerage, and the water dampened his shoes and socks, as well as some portion of his bed sheet. However, Plaintiff states that he had soap to clean his hands and bed sheet. During this time, Plaintiff showered three times and his trash was collected and disposed of twice daily. The record shows that

8

Plaintiff received new clothing and linens on April 22nd, and there is no evidence to suggest that Plaintiff lacked a sanitary place in his cell to sleep and to eat his meals. Plaintiff fails to demonstrate that he suffered any greater consequence than an assault of his olfactory senses based on what appears to have been minimal exposure to toilet water.

In sum, "not every overflowed toilet in a prison amounts to a constitutional violation." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (no constitutional violation where pretrial detainee subjected to overflowed toilet for four days). Even taking Plaintiff's version of events as true, the unsanitary conditions in his cell were not sufficiently severe or prolonged to rise to the level of an Eighth Amendment violation.

### b) Deliberate Indifference

The Court also considers whether a reasonable jury could find that any of the defendants acted with the requisite mens rea during the events in question. This involves an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Wilson*, 501 U.S. at 299. This is because "[a]fter incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotations omitted). Whether a defendant's actions can be characterized as "'wanton' depends upon the constraints facing the official." *Wilson*, 501 U.S. at 303. "In prison-conditions cases [the requisite] state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834. Stated more specifically, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

### i. *Defendant Mack*

Defendant Mack only worked a single shift during the events in question, on Friday, April 18th from 6:00 a.m. to 2:00 p.m. At some point during his shift, Mack

9

escorted Plaintiff to the showers. Taking the facts in the light most favorable to Plaintiff, Mack observed the unsanitary condition of Plaintiff's cell. Plaintiff advised Mack that the night officer had placed Plaintiff's name on a list for a plumber. Plaintiff asked Mack to call the sergeant and advise him of the conditions in his cell. In response to Plaintiff's request for assistance, Mack told Plaintiff he would do "something about it," but Plaintiff claims Mack did nothing. Plaintiff appears to lack personal knowledge on this point, however, and "[g]enerally, a witness must have 'personal knowledge of the matter' to which []he testifies." *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (citing *Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir. 1995) (quoting Fed. R. Evid. 602)).

Even assuming Defendant Mack failed to act, a reasonable trier of fact would not find that Mack acted deliberately indifferent to Plaintiff's health or safety. Viewing the record in the light most favorable to Plaintiff, it reflects that Defendant Mack observed the conditions of Plaintiff's cell no earlier than 6:00 a.m. on Friday, April 18th. At that time, Plaintiff's toilet had overflowed less than ten hours previously, and as Plaintiff himself advised Mack, the night watch officer had already placed Plaintiff's name on a list for a plumber. Defendant Mack escorted Plaintiff to the showers, where he would have been able to clean any portion of his body exposed to the approximately three millimeters of water on the floor of his cell. Mack advised Plaintiff he would do "something about" the toilet situation. Even assuming Mack did not do anything, his failure to act during his single eight-hour shift – when Plaintiff's toilet had overflowed minimally, less than ten hours previously, and the night watch officer appeared to have addressed the situation by placing Plaintiff on the list for a plumber – does not rise to the level of a constitutional violation, and mere negligence is not actionable under Section 1983. *Farmer*, 511 U.S. at 835-36.

      *ii. Defendant Helmick*

According to Plaintiff, he reported the problem with the toilet to an unknown correctional officer after Defendant Helmick got off duty on Thursday, April 17th.

Helmick did not work another shift until the 2:00 p.m. to 10:00 p.m. shift on Sunday, April 20th, which is the soonest he could have known about the plumbing issue in Plaintiff's cell. Taking the facts in the light most favorable to Plaintiff, Defendant Helmick declined to provide Plaintiff with a plunger or other materials on April 20th because his shift was about to end. However, Helmick retrieved Plaintiff's completed Form 22 from him, and as apparent from the face of the form itself, signed it, and forwarded it to Sergeant Ojeda via the U.S. mail method of delivery.[4]

Defendant Helmick worked the 2:00 p.m. to 10:00 p.m. shift the next two days, Monday, April 21st and Tuesday, April 22nd. Helmick states that he did not notice any issues with Plaintiff's toilet or cell either day. Plaintiff does not indicate that he interacted with Helmick either day, and he does not offer any evidence to suggest that Helmick knew about any continuing unsanitary condition in Plaintiff's cell. Even viewing the facts in the light most favorable to Plaintiff, no reasonable jury could find that Defendant Helmick disregarded an excessive risk to Plaintiff's health or safety.

### iii. Defendant Ojeda

Defendant Ojeda worked April 17-19th, but indicates that he was not made aware of the problems in Plaintiff's cell until he received the Form 22 via mail on April 23rd. Ojeda investigated Plaintiff's claims that day, and found a clean cell, a working toilet, and no evidence of sewerage or flood damage. Plaintiff does not dispute that Defendant Ojeda did not work on April 20th or 21st. Nevertheless, Plaintiff asserts that Defendant Ojeda came to the door of Plaintiff's cell on "either [the] 18th, 19th, or 22nd." Doc. No. 84 at 7. Plaintiff does not specify which day Ojeda came to the door of his cell, but asserts that Ojeda knew of the problem on one of those days because Plaintiff yelled at Ojeda from his cell. Plaintiff's self-serving speculation is insufficient to create a genuine

---

[4] The Form 22 indicates that there are two "methods of delivery" available: in person or via U.S. mail. Defendant Ojeda did not work on April 20th, accordingly, Defendant Helmick did not have the option of delivering the Form 22 request to Ojeda in person.

11

issue of fact for trial. *Nilsson v. City of Mesa*, 503 F.3d 947, 955 (9th Cir. 2007) ("rank speculation" insufficient to create a genuine issue of fact). Moreover, Plaintiff presents no evidence to suggest that Defendant Ojeda received his Form 22 prior to April 23rd, the same day Ojeda investigated the issue and confirmed that there was no problem with Plaintiff's toilet. No reasonable jury would conclude based on these facts that Defendant Ojeda deliberately disregarded a substantial risk to Plaintiff's health or safety.

### c) Conclusion

In sum, Plaintiff has failed to raise a triable issue of material fact as to whether any of the defendants acted with deliberate indifference to his health and safety. As such, Defendants are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claim.

### CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motion for summary judgment. The Clerk of Court is instructed to enter judgment accordingly and close the case.

**IT IS SO ORDERED**.

DATE: March 30, 2018

HON. MICHAEL M. ANELLO
United States District Judge