UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL ARELLANO, JR.,<br><br>         Plaintiff,<br><br>v.<br><br>E. OJEDA, et al.,<br><br>         Defendants. | Case No. 14cv2401-MMA (JLB)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY;**<br><br>[Doc. No. 101]<br><br>**DENYING PLAINTIFF'S MOTION TO STRIKE**<br><br>[Doc. No. 103] |

  Plaintiff Raul Arellano, Jr., a state prisoner proceeding *pro se*, brings an Eighth Amendment conditions of confinement claim pursuant to 42 U.S.C. § 1983, arising out of allegations that prison officials failed to adequately respond when his cell toilet clogged and overflowed over the course of a long weekend. Defendants O. Mack and L. Helmick move for summary judgment on the grounds that they are entitled to qualified immunity from suit. *See* Doc. No. 101. Plaintiff moves to strike Defendants' motion for summary judgment. *See* Doc. No. 103. For the reasons set forth below, the Court **DENIES** Plaintiff's motion to strike and **GRANTS** Defendants' motion for summary judgment.

1

# BACKGROUND[1]

## A. Factual Background

Plaintiff alleges that on or about April 17, 2014 through April 22, 2014, sewer water flowed out through the toilet in his cell, leaving up to three millimeters of sewer water on the floor, soaking his clothing, and making it difficult to eat or sleep due to the smell. *See* Doc. No. 13 at 3.[2] On Thursday, April 17, 2014, Plaintiff advised an unknown correctional officer of the issue. The unknown correctional officer told Plaintiff that a plumber would be called the next day. *Id.*

According to Plaintiff, on Friday, April 18, 2014, while walking to the showers, he complained to Defendant Correctional Officer Mack about the clogged toilet, and asked for a plunger or to be switched to another cell. Plaintiff claims that he told Defendant Mack that the night watch officer had put Plaintiff on the list for a plumber, and asked Mack to check and see if a plumber had been called. According to Plaintiff, Defendant Mack told him that "he would see what he could do," but then did nothing. *Id*. at 4. According to Defendant Mack, however, "[a]t no point while working in that building on April 18, 2014, did I notice that inmate Arellano's toilet was clogged up and overflowing, or that there was sewage on his floor. I also did not notice any fluid coming out from under any cell door that day. I would have noticed any such condition during my rounds and reported it immediately." Doc. No. 67-6 at 3 ¶ 5. Defendant Mack did not work any other shift during the events in question.

Plaintiff further claims that on Saturday, April 19, 2014, an unknown correctional officer told him that a plumber would not be coming to fix his toilet over the weekend.

---

[1] These facts are taken from Defendants' Separate Statement of Undisputed Material Facts in Support of the Motion for Summary Judgment; Defendants' declarations submitted in support of the motion for summary judgment; Plaintiff's sworn Supplemental Response in Opposition to Defendant's motion for summary judgment; and Plaintiff's verified Second Amended Complaint, *see Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

[2] Citations to electronically-filed documents refer to the pagination assigned by the CM/ECF system.

Plaintiff then filled out a Form 22 "Inmate/Parole Request for Interview, Item or Service," and gave it to Defendant Correctional Officer Helmick the next day for delivery to Correctional Sergeant Ojeda. Plaintiff claims that he complained to Defendant Helmick regarding the conditions in his cell, and Defendant Helmick responded by telling Plaintiff to use his hands to unclog the toilet. *See* Doc. No. 87 at 3. According to Defendant Helmick, however, "[a]t no time was there any evidence that there was one inch of sewage in inmate Arellano's cell from April 17 to 22, 2014. There was no sewage smell in the building during the days I worked during that time period. Inmate Arellano never told me there was a sewage problem in his cell. He never asked for a cell change or for cleaning materials." Doc. No. 67-5 at 5 ¶ 11.

According to Plaintiff, on Tuesday, April 22, 2014, he unclogged the toilet using his hands and cleaned his cell using a twin-sized bed sheet and soap. *Id.*

**B. Procedural Background**

Based on these events, Plaintiff filed suit alleging that Correctional Officer Helmick, Correctional Officer Mack, and Correctional Sergeant Ojeda violated his Eighth Amendment rights, and seeking $5,000,000.00 in damages. On March 30, 2018, the Court granted summary judgment in favor of Defendants. *See* Doc. No. 87. The Court determined that "[e]ven taking Plaintiff's version of events as true, the unsanitary conditions in his cell were not sufficiently severe or prolonged to rise to the level of an Eighth Amendment violation." *Id.* at 9. In other words, the Court concluded that no reasonable jury could find that Plaintiff suffered an unconstitutional deprivation under the objective component of Plaintiff's Eighth Amendment claim. Once again taking the facts in the light most favorable to Plaintiff, the Court assumed that Defendants were aware of the conditions in Plaintiff's cell, but further concluded that no reasonable jury could find that any of the defendants acted with the requisite intent necessary to find a constitutional violation. The Court directed the Clerk of Court to enter judgment in favor of Defendants. *See* Doc. No. 88. After unsuccessfully challenging the summary judgment

order under Federal Rule of Civil Procedure 59(e), Plaintiff filed an appeal. *See* Doc. Nos. 90-92.

On January 22, 2019, the United States Court of Appeals for the Ninth Circuit reversed the entry of judgment in favor of Defendants Mack and Helmick based on a "genuine dispute of material fact as to whether defendants [Mack and Helmick] knew of the sanitation issue and acted with deliberate indifference in failing to address it." *See* Doc. No. 100 at 3. The Ninth Circuit remanded the case back to this Court for further proceedings. After spreading the circuit court's mandate, the Court *sua sponte* ordered Defendants Mack and Helmick to file a supplemental brief addressing whether they are entitled to qualified immunity from suit. In response, Defendants filed the instant motion for summary judgment. *See* Doc. No. 101. In lieu of a response, Plaintiff filed a motion to strike Defendants' motion for summary judgment. *See* Doc. No. 103. Plaintiff challenges the Court's ability to raise the issue of qualified immunity *sua sponte* and argues Defendants may not have a third opportunity in this case to move for summary judgment.

## **LEGAL STANDARD**

### *1. Summary Judgment*

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

The party opposing summary judgment cannot "rest upon the mere allegations or denials of [its] pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.), cert. denied, 555 U.S. 827 (2008) (internal quotation marks omitted). In applying the standard set forth under Rule 56, district courts must "construe liberally motion papers and pleadings filed by *pro se* inmates and . . . avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

### 2. *Qualified Immunity*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stanton v. Sims*, 571 U.S. 3, 4-5 (2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Courts analyze two prongs to determine whether qualified immunity applies: officers have qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Easley v. City of Riverside*, 890 F.3d 851, 855 (9th Cir. 2018) (quoting *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018)). "Clearly established" means that the law was "sufficiently clear that every reasonable official would understand that what he is doing" is unlawful. *Wesby*, 138 S.Ct. at 589 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (internal quotation marks omitted). This standard protects "all but the plainly incompetent or those who knowingly violate the law" and leaves officers "ample room for mistaken judgments." *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986).

A district court may raise the issue of qualified immunity sua sponte and address it on summary judgment. *Easley*, 890 F.3d at 855. Although qualified immunity is an affirmative defense, "a district court is not proscribed from directing the parties to brief the issue when it has been properly raised." *Id.* District courts "unquestionably possess

5

14cv2401-MMA (JLB)

the power to enter summary judgment sua sponte even on the eve of trial." *Norse v. City of Santa Cruz*, 629 F.3d 966, 971 (9th Cir. 2010).

## DISCUSSION

### *1. Plaintiff's Motion to Strike*

Plaintiff moves to strike Defendants' motion as procedurally improper because Defendants have twice moved for summary judgment in this action on other grounds. *See* Doc. No. 103. Pursuant to Federal Rule of Civil Procedure 56, "[u]nless a different time is set by local rule *or the court orders otherwise*, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b) (emphasis added). The rule does not limit a party to filing only one motion, and if the Court "orders otherwise," as the Court has here, a party may file a motion more than thirty days after the close of discovery. Moreover, Defendants' current motion is brought on different substantive grounds than the previous motions, and Defendants preserved the right to move for summary judgment based on qualified immunity by including it as an affirmative defense in their answer. *See* Doc. No. 53 at 5; Doc. No. 61 at 5; Fed. R. Civ. P. 8(c).

Plaintiff further contends that the Ninth Circuit's ruling precludes dismissal of the action based on Defendants' qualified immunity. *See* Doc. No. 103. However, the Ninth Circuit did not address the issue of qualified immunity, and "[l]ower courts are free to decide issues on remand so long as they were not . . . decided explicitly or by necessary implication in [the] previous disposition." *Liberty Mut. Ins. Co. v. Equal Emp't Opportunity Comm'n*, 691 F.2d 438, 441 (9th Cir. 1982) (internal citations omitted). Because "a district court is not proscribed from directing the parties to brief the issue when it has been properly raised[,]" this Court has the authority to raise qualified immunity sua sponte and direct the parties to brief the issue. *Easley*, 890 F.3d at 855. As such, Defendants' motion for summary judgment is properly before the Court.

//
//

### *2. Defendants' Motion for Summary Judgment*

As an initial matter, the Court notes that it may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. If either prong is dispositive, the Court need not analyze the other prong. *Id.* at 236-37.

A. Constitutional Violation

The Court previously concluded, based on the record viewed in the light most favorable to Plaintiff, that "the unsanitary conditions in his cell were not sufficiently severe or prolonged to rise to the level of an Eighth Amendment violation." Doc. No. 87 at 9. The circuit court did not remark on this aspect of the Court's ruling, nor did the circuit court address in any fashion the objective component of Plaintiff's Eight Amendment claim against Defendants. *See, e.g., Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (explaining that "[e]stablishing a violation of the Eighth Amendment requires a *two-part* showing" of a "sufficiently serious deprivation" and "deliberate indifference" on the part of the defendant) (emphasis added). Accordingly, the circuit court did not "explicitly" decide the issue. *Liberty Mut. Ins. Co.*, 691 F.2d at 441. To the extent the Court's previous conclusion remains undisturbed after appellate review, it is dispositive as to the first prong of the qualified immunity analysis and the Court need not address the second prong. However, in an abundance of caution, the Court will do so.

B. Clearly Established Law

Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft*, 563 U.S. at 743 (quoting *Malley*, 475 U.S. at 343). Government officials are protected from liability so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Stanton*, 571 U.S. at 4-5. The Ninth Circuit has established a broad view of qualified immunity, holding that "if officers of reasonable competence could disagree on th[e] issue [whether a chosen course of action is constitutional], immunity should be

7

14cv2401-MMA (JLB)

recognized." *Brewster v. Board of Educ. of Lynwood U. School Dist.*, 149 F.3d 971, 977 (9th Cir. 1998) (quoting *Malley*, 475 U.S. at 341). To successfully rebut an affirmative defense of qualified immunity, "a plaintiff must show that the officer's conduct was so egregious that any reasonable person would have recognized a constitutional violation." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

> *i. Defendant Mack*

Plaintiff complained to Defendant Mack at "around 9 or 10 a.m." about the clogged toilet in his cell and asked for cleaning tools or to be switched to another cell, to which Mack replied that "he would see what he could do." Doc. No. 13 at 4. Plaintiff also told Defendant Mack that the night watch officer had put Plaintiff on the list for a plumber and asked Mack to check if a plumber had been called. Doc. No. 87 at 2. Plaintiff insists that Defendant Mack ignored these requests. Defendant Mack claims that "Inmate Arellano never told [him] that his toilet was clogged and that he had sewage flowing out of it, and such a condition would not have gone unnoticed" due to the easily visible location of Plaintiff's cell. Doc. No. 101-6 at 4.

Defendant Mack's shift ended at 2:00 p.m. that day, approximately four or five hours after Plaintiff informed Mack of the clogged toilet, and Mack did not work another shift during the events in question. Doc. No. 87 at 2. Viewing the facts in the light most favorable to Plaintiff, even if Defendant Mack did not follow up on Plaintiff's request for the remainder of his shift, Plaintiff has not shown that Mack's conduct was "so egregious that any reasonable person would have recognized a constitutional violation." *Romero*, 931 F.2d at 627.

While "severe and prolonged" lack of sanitation can be a constitutional violation, *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995), the Ninth Circuit has acknowledged that "toilets can be unavailable for some period of time without violating the Eighth Amendment." *Johnson v. Lewis*, 217 F.3d 726, 733 (9th Cir. 2000). The *Anderson* Court found that being shackled to an unsanitary toilet for one night did not rise to the level of a constitutional violation. *Anderson*, 45 F.3d at 1315. Here,

8

Defendant Mack's failure to act during the last four to five hours of his shift – when the night watch officer appeared to have addressed the situation by placing Plaintiff on the list for a plumber – does not rise to the level of "clearly established" unlawfulness required to abrogate immunity. *Easley*, 890 F.3d at 855. While Mack may have failed to respond to Plaintiff's requests immediately, Mack did not engage in conduct so egregious that "every reasonable official would understand" him to have been violating the Eighth Amendment. *Wesby*, 138 S.Ct. at 589. Held to the standard set in *Anderson*, Mack's conduct is not considered a "clearly established" constitutional violation, even if Mack did nothing to respond to Plaintiff's concerns during the remainder of his shift. *Id.*

In sum, "officers of reasonable competence could disagree" on the issue of whether Defendant Mack's failure to follow up for those four to five hours was unlawful, and therefore Mack is entitled to qualified immunity. *Brewster*, 149 F.3d at 977.

### ii. *Defendant Helmick*

Plaintiff asserts that he handed Defendant Helmick a Form 22 "Inmate/Parolee Request for Interview, Item, or Service" for delivery to Correctional Sergeant Ojeda, alerting Helmick to the sanitation issue in Plaintiff's cell. Doc. No. 87 at 3. According to Defendant Helmick, however, "[a]t no time was there any evidence that there was one inch of sewage in inmate Arellano's cell from April 17 to 22, 2014. There was no sewage smell in the building during the days I worked during that time period. Inmate Arellano never told me there was a sewage problem in his cell. He never asked for a cell change or for cleaning materials." Doc. No. 67-5 at 5.

In his deposition, Plaintiff admits he addressed the situation with Defendant Helmick approximately one hour before the end of Helmick's shift on April 20, 2014, and Helmick responded by assuring Plaintiff that the sergeant would receive his Form 22 by the following day. Doc. No. 101-1 at 35. Plaintiff concedes that Defendant Helmick did in fact read the Form 22 and forward it to the sergeant. *Id.* at 34. That Plaintiff believes these responses were insufficient does not abrogate Helmick's immunity unless "every reasonable official would understand" him to have been acting unlawfully.

9

*Wesby*, 138 S.Ct. at 589. While Plaintiff may believe the sanitation issue could have been addressed more efficiently, Defendant Helmick accepted the form and forwarded it to the sergeant, just as Plaintiff asked. *See* Doc. No. 101-1 at 35. Such a response was not "so egregious that any reasonable person would have recognized a constitutional violation." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). Defendant Helmick is therefore entitled to qualified immunity.

### C. Conclusion

In sum, the Court finds that Defendants Mack and Helmick are entitled to immunity from suit for damages in their individual capacities.[3]

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motion for summary judgment based on qualified immunity. The Court **DIRECTS** the Clerk of Court to enter judgment accordingly and close the case.

**IT IS SO ORDERED**.

DATE: December 2, 2019

HON. MICHAEL M. ANELLO
United States District Judge

---

[3] Of course, qualified immunity is not available when an official is sued in his official capacity and the plaintiff seeks prospective injunctive relief. *See Brandon v. Holt*, 469 U.S. 464, 472-73; *American Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991). Here, Plaintiff also sued Defendants in their official capacities and requested an injunction against retaliation "in any form." Doc. No. 13 at 9. To the extent this constitutes a request for prospective relief, it does not relate to Plaintiff's Eighth Amendment claims against these defendants or an ongoing constitutional violation. As such, the request is barred by the Eleventh Amendment. *See Ex parte Young*, 209 U.S. at 157 (official sued must have some connection to enforcement of allegedly unconstitutional act); *Verizon Md. Inc. v. PSC*, 535 U.S. 635, 645 (2002) (*Ex parte Young* applies where complaint alleges ongoing violation of federal law and seeks relief properly characterized as prospective).